693 So.2d 574 (1997)
Mario DELVA, Appellant,
v.
VALUE RENT-A-CAR, Appellee.
No. 95-1217.
District Court of Appeal of Florida, Third District.
February 5, 1997.
Rehearing Denied June 9, 1997.
*575 Simon & Nelson, Miami; Maland & Ross and Lauri Waldman Ross, Miami, for appellant.
Walton, Lantaff, Schroeder and Carson, Miami; Cooper & Wolfe and Marc Cooper and Maureen E. Lefebvre, Miami, for appellee.
Before SCHWARTZ, C.J., and JORGENSON and COPE, JJ.
SCHWARTZ, Chief Judge.
Delva, then in his early twenties, was involved in an intersection accident in which he sustained permanent disabling injuries both to his back, including two spinal fractures, and his head, including optic nerve damage. In answer to special interrogatories, the jury found the driver of the defendant's car 100% liable for the accident. As to damages, it found that Delva had sustained permanent injuries and assessed $20,034 for past medicals, $1,000,000 for fifty years of future medicals reduced to a present value of $480,000, $20,000 in past non-economic losses but nothing for future ones.[1] After the verdict, plaintiff's counsel pointed out the apparent inconsistency in the $1,000,000 and zero verdicts for future intangibles and requested that the case be resubmitted to the jury to reconcile them. The defense, however, specifically and successfully resisted this suggestion. Subsequently, the trial judge orally granted a defense motion for a "mistrial"
and set this case for new trial because I don't think this case was appropriately resolved... [a]s to all issues.
Still later, he signed a written order granting a new trial on both liability and damages essentially on the grounds that the damage verdicts were inconsistent and, as to the future medical award, excessive.[2] We reverse *576 with directions to enter judgment on the jury verdict.

I.
We first find no basis for the trial judge's order that the new trial include the issue of liability. Even if, as we do not, we agreed that the jury's damage awards justified a re-trial on those questions, there was no error adverse to the defendant on the liability question and no indication that its resolution of that issue was in any way influenced by its decisions on damages. Hence, that portion of the order under review cannot be sustained. See Purvis v. Inter-County Tel. & Tel. Co., 173 So.2d 679 (Fla.1965); Griefer v. DiPietro, 625 So.2d 1226 (Fla. 4th DCA 1993), and cases cited; Royal Indemnity Co. v. Muscato, 305 So.2d 228, 229 (Fla. 4th DCA 1974), cert. denied, 321 So.2d 76 (Fla.1975); Larrabee v. Capeletti Bros., Inc., 158 So.2d 540 (Fla. 3d DCA 1963); see also D.R. Mead v. Cheshire, Inc., 489 So.2d 830 (Fla. 3d DCA 1986). The trial judge's reliance on Rivera v. Aldrich, 538 So.2d 1390 (Fla. 3d DCA 1989) was totally misplaced. That case involved an allegedly inadequate verdict in which, because it was possible that the jury had compromised on liability, a new trial on both liability and damages was required. This case, in which the jury specifically found 100% defense liability and the opposite of inadequacy is alleged, requires a different result.

II.
Turning to the real issues in the case, which arise from the damage verdicts, we likewise find the new trial order unjustified. This is because the bases of that rulingthat the $1,000,000 award for future expenses is inconsistent with the zero verdict for future intangibles and excessive for that element of damages when considered in isolationare both legally flawed.
1. Inconsistency. Even assuming arguendo both that an award for future expenses is necessarily legally inconsistent with a zero verdict for future pain and suffering, but see Allstate Ins. Co. v. Manasse, 681 So.2d 779, 784 (Fla. 4th DCA 1996)(Klein, J., dissenting), and the even more dubious proposition that the defendant may be heard to complain about it,[3] compare Allstate Ins. Co. v. Manasse, 681 So.2d 779 (Fla. 4th DCA 1996) (plaintiff contending that zero verdict for future non-economic damages was inadequate and inconsistent with award for future medicals), there is no doubt that such an inconsistency may, and if possible, should be cured by permitting the jury to resolve it. See Cowart v. Kendall United Methodist Church, 476 So.2d 289 (Fla. 3d DCA 1985). In this case, the jury, after being told that *577 the two verdicts could not stand together, could have transposed the awards, divided the $1,000,000 between the two elements, or even left the $1,000,000 where it stood and added an additional amount for future intangibles. By objecting to the plaintiff's specific request that the jury be allowed to obviate the inconsistency problem in any of these ways, the appellee effected a binding waiver of its right to a new trial on that ground. See Cushman & Wakefield, Inc. v. Comreal Miami, Inc., 683 So.2d 208 (Fla. 3d DCA 1996); see also Higbee v. Dorigo, 66 So.2d 684 (Fla.1953); Hendelman v. Lion Country Safari, Inc., 609 So.2d 766 (Fla. 4th DCA 1992)(Dell, J., concurring specially), review dismissed, 618 So.2d 209 (Fla.1993); Alamo Rent-A-Car, Inc. v. Clay, 586 So.2d 394 (Fla. 3d DCA 1991); Cowart, 476 So.2d at 289; Wiggs & Maale Constr. Co. v. Harris, 348 So.2d 914 (Fla. 1st DCA 1977); Lindquist v. Covert, 279 So.2d 44 (Fla. 4th DCA 1973). In Savoca v. Sherry Frontenac Hotel Operating Co., 346 So.2d 1207 (Fla. 3d DCA 1977), we held that the plaintiffs' successful resistance to a request to resubmit the issue barred a subsequent contention that a zero verdict for the husband's derivative claim was "inconsistent" with a damage award for the injured wife. By the same token, this defendant's post trial challenge to the inconsistency of a plaintiff's verdict is likewise barred. Thus, this aspect of the general rule requiring the timely assertion below of correctable error, Cowart, 476 So.2d at 290, which is directly applicable both on appeal and with respect to a motion for new trial, see Shank v. Fassoulas, 304 So.2d 469 (Fla. 3d DCA 1974); see generally Cushman & Wakefield, 683 So.2d at 208, requires reversal.
2. Excessiveness. The other, but closely interrelated, complaint about the $1,000,000 verdict for future expenses is that it was "excessive" as unjustified by the evidence as to that particular issue. For two reasons, we again disagree.
In the first place, any reconsideration by the jury of the case as a whole, could haveand therefore, it must be presumed, would haveresulted in a reduction or elimination of the future medical award to a point of inexcessiveness or nonexistence, respectively. Thus, the defendant's successful objection below waived this claim as well. On this point, we endorse Judge Dell's opinion in Hendelman, 609 So.2d at 767:
It follows that a party may not circumvent these cases by later arguing the verdict is inadequate or contrary to the manifest weight of the evidence. It also seems logical that in most cases an inconsistent verdict would be either inadequate or contrary to the manifest weight of the evidence.
Plainly, the inadequacy situation there is the same as the excessiveness issue involved here.
Moreover, the excessiveness contention incorrectly views the verdict on the future expenses issue alone and without reference to the entire case. Here, it is obvious that the jury wished to award the plaintiff, who is uncontrovertedly seriously and permanently injured, what amounted to some $20,000 for each of the fifty years in the future (which is half of what it assessed for the year in the past). If the jury had merely transposed the verdicts from future medicals to future non-economic losses, no one could rightly suggest that the result would have been challengeable in any way. See Pierard v. Aerospatiale Helicopter Corp., 689 So.2d 1099 (Fla.3d DCA 1997); Oakes v. Pittsburgh Corning Corp., 546 So.2d 427 (Fla. 3d DCA 1989). In these circumstances, even in the absence of a successful resubmission to the jury, the trial court was required to adjust the verdicts actually returned to reflect their lawful intention. See Cory v. Greyhound Lines, Inc., 257 So.2d 36 (Fla.1971); Baker Protective Servs. Inc. v. FP, Inc., 643 So.2d 1099 (Fla. 3d DCA 1994); Burgess v. Mid-Florida Serv., 609 So.2d 637 (Fla. 4th DCA 1992); Balsera v. A.B.D.M & P. Corp., 511 So.2d 679 (Fla. 3d DCA 1987), review denied, 519 So.2d 986 (Fla.1987); Phillips v. Ostrer, 481 So.2d 1241 (Fla. 3d DCA 1985), review denied, 492 So.2d 1334 (Fla.1986). The manner in which the jury itself allocated the awards to the various elements of damages made no legal difference to the bottom line the clearly sustainable gross amount which the defendant must pay the plaintiff for the injuries it caused. In our view, therefore, *578 this issue involves nothing more than harmless error.
Indeed, because any damages for future intangibles, unlike future economic losses, are not legally reducible to present money value, Braddock v. Seaboard Air Line R.R., 80 So.2d 662 (Fla.1955), the failure of the trial court to reassign the awards itself, or to give the jury the opportunity either to do so or to make an additional award for that element, harmed only the plaintiff. Since the defendant cannot complain of favorable error, 3 Fla.Jur.2d Appellate Review § 284 (1978), and, by expressly waiving in this court his claim to anything beyond the reduced amount of $480,000 actually returned for all future damages, see Cowart, 476 So.2d at 289, Delva does not do so, there is no reasoned basis to deny him that relief.
Accordingly, the order under review is reversed with directions to enter judgment for the plaintiff on the jury verdict of $520,034 nunc pro tunc the date of its return.
Reversed and remanded.
JORGENSON, J., concurs.
COPE, Judge. (concurring in part and dissenting in part).
I concur with regard to part I of the majority opinion and respectfully dissent with regard to part II. In my view, the record does not support the majority's conclusion that it was the defense which successfully opposed returning the matter to the jury for correction of the inconsistent verdict.
The jury's verdict was read in open court. The last item on the verdict was a zero damage award for the plaintiff's future pain and suffering. See majority opinion, footnote 1. Thereupon, the following took place:
[PLAINTIFF'S COUNSEL]: Your Honor, may we approach?
THE COURT: Yes.
(Thereupon, the following proceedings were had at the bench by the Court and counsel out of the hearing of the jury:)
[PLAINTIFF'S COUNSEL]: I think the only problem with this is I think this would be an inconsistent verdict with they have to put in some number if they found it in the past. I think we have to send them back.
[DEFENDANT'S COUNSEL]: No, your Honor.
THE COURT: This whole thing boggles the mind.
[DEFENDANT'S COUNSEL]: The only evidence being that he may need
THE COURT: Wait a minute now. You're talking about something else.
[DEFENDANT'S COUNSEL]: I'm just saying number 6 does not support the evidence whatsoever.
THE COURT: Number 6 is supposed to be medical damages in the future to the pain, suffering. There's no way he's going to get $1 million worth of medical damages in the future. I think they misunderstood.
[PLAINTIFF'S COUNSEL]: I think they can certainly determine the fact that they want to take care of him with all the treatment.
A lot of jurors don't like to give money because they read about it in the paper, pain and suffering and so on, and the problem is that in the future they find they will make
[DEFENDANT'S COUNSEL]: Referring to it in its entirety, it makes no sense whatsoever. 6 is not supported by any evidence whatsoever in this case.
[PLAINTIFF'S COUNSEL]: That's ridiculous.
[DEFENDANT'S COUNSEL]: The pain and suffering is certainly not justifiable in
[PLAINTIFF'S CO-COUNSEL]: You need to send them back out again.
THE COURT: Yeah, and I have to explain to them what the problem is, and I don't know how to do that without getting into their minds.
[DEFENDANT'S COUNSEL]: I think you have to just tell them that as to number 6 and 7, they have to correspond.
Number 6 and number 8, your Honor, that has to be limited to future medicals. It's limited to future medicals and hospital expenses.

*579 THE COURT: Can you, in good [conscience], say that the future medical and hospital is going to be $1 million?
[PLAINTIFF'S COUNSEL]: For fifty-one years, absolutely, with this evidence that he may need surgery and physical therapy and medication.
THE COURT: Be realistic. Forget the dollars. Forget the money, but be realistic about the need for $1 million. Do you really believe that?
[PLAINTIFF'S COUNSEL]: Judge, I'm telling you that what juries do is they don't know what to award for pain and
THE COURT: They didn't do it the other way. It can't be corrected. You got me. You got me. I got a problem, and I don't know what to do with it.
(Thereupon, the following proceedings took place in open court, following a discussion at side-bar:)
THE COURT: All right. Does either side wish the jury to be polled?
[PLAINTIFF'S COUNSEL]: We waive, your Honor.
THE COURT: Do you want to poll the jury?
[DEFENDANT'S COUNSEL]: Your Honor, I want to be heard at side-bar first, and then yes.
THE COURT: All right.
(Thereupon, the following proceedings were had at the bench by the Court and counsel out of the hearing of the jury:)
[DEFENDANT'S COUNSEL]: Your Honor, for the following reasons I move for a mistrial: One, there's an inherent inconsistency in that the verdict form, as it presently stands, which cannot be internally made consistent and, therefore, in this case, at the present time, if you are not going to send them back, it's the only way that the thing can be cured.
Number 2: Again, I would renew on the issue of counsel's inappropriate use of the term lie and liar as to Christian Brotons, and we have a Third DCA case that, in fact, addresses that.
THE COURT: That may be a post-trial matter, but
[PLAINTIFF'S CO-COUNSEL]: We need to send them out again. The law says for an inconsistent verdict we need to send them back out again.
As to pain and suffering into the future, it's definitely inconsistent, and we need a ruling from the Court to send them back.
THE COURT: Not necessarily. Wait a minute. Wait a minute. If you take a million and divide it by fifty, what do you get? Then we have a figure that
Folks, do you want to go back in the jury room for a few minutes, please, and do not, at this pointWell, I guess you can. Let's not talk about the case.
(Thereupon, the jurors returned to the jury room, and the following proceedings took place:)
[DEFENDANT'S CO-COUNSEL]: Your Honor, the number is $40,00050 times $40,000, one million becomes $20,000 every year of his life.
[PLAINTIFF'S CO-COUNSEL]: Yeah, that's what they did. They took the present medical expenses, and they found he was gonna have the same medical expenses.
[PLAINTIFF'S COUNSEL]: There's absolutely nothing wrong with it, your Honor.
[DEFENDANT'S COUNSEL]: And there's nothing in the evidence to support that, your Honor.
THE COURT: Just a minute. The present money value is $480,000. So let's just see what that turns out to be. $480,000, divided by 50, that's $9,600 every year, but then that doesn't take into consideration inflation and cost of living increase.
I just don't know where they got a $1 million outside of that.
[DEFENDANT'S COUNSEL]:
There's no evidence of that whatsoever, your Honor. The only one was Dr. Wagshul who saidand to paraphrase what he said, with respect to physical therapy, he may need some in the future.
As to a doctor, one should be available to him, and he said he could not determine with respect to surgery at all. That was it. *580 No monetary amount, and it would be absolutely unsupportable.
THE COURT: See, this is what bothers me: If they decided that it was worth $20,000 in pain and suffering and disability and physical impairment and all of that in the past, but he's not gonna suffer any pain at all in the future, then how did they come up with $1 million in medical expenses?
[PLAINTIFF'S COUNSEL]: That's simple, your Honor. They have provided for all of his future medical expenses under 6(a), 6(c); and it's absolutely consistent with the evidence that came into this court and to this trial.
THE COURT: I don't think it's consistent with the evidence and dollar-wise, but that's up to them I guess.
[DEFENDANT'S COUNSEL]: It's internally inconsistent, your Honor, and the
THE COURT: No, I'm gonna just leave it the way it is and let the appellate court figure it out because I can't.
(Emphasis added).
When the colloquy is read in its entirety, it is clear that both sides took the position that the verdict was inconsistent. At the first sidebar the court appeared to agree that the matter must be returned to the jury and the debate was about how to instruct the jury. The court then decided that the problem could not be corrected and the sidebar ended. Defense counsel asked to approach the bench again and argued that the verdict was internally inconsistent, and that if the trial court had determined not to return the matter to the jury, then the defense requested a mistrial. The final words were defense counsel's statement "It's internally inconsistent, your Honor," and the court responded, "No, I'm gonna just leave it the way it is...."
What confused the issue somewhat was the disagreement between plaintiff and defendant over whether there was an evidentiary basis to support a $1 million award on item 6a, future medical expenses. The plaintiff argued that this award was supported by the evidence, while the defense took the contrary position.
The majority opinion appears to have fastened on defense counsel's statement "No, your Honor," which defense counsel made in response to plaintiff's initial request to send the matter back to the jury. However, the "no" was in response to plaintiff's statement that the jury should be told that they could not award zero on item 8b, future pain and suffering. Defense counsel's position, as fleshed out in the colloquy, was that the jury should be instructed on the interrelationship between items 6, 7, and 8 and should revisit the totality of the award on proper instructions, not just item 8b.
The colloquy must be read in its totality. Reading the colloquy as a whole, both sides took the position that there was an inconsistent verdict, and the decision not to return the matter to the jury was that of the court.
There should be a new trial on damages.
NOTES
[1] Specifically, the jury rendered the following damage verdicts:

5. What is the amount of
 any damages sustained
 by MARIO DELVA for
 medical and hospital expenses
 in the past? $ 20,034.00
6. What is the amount of
 any future damages for
 medical and hospital expenses
 to be sustained by
 MARIO DELVA in future
 years?
 a. Total damages over
 future years? $ 1,000,000.00
 b. The number of years
 over which those future
 damages are intended
 to provide
 compensation? 50
 c. What is the present
 value of those future
 damages? $ 480,00.00
7. Did MARIO DELVA sustain
 a permanent injury
 or damages as a result of
 the car accident on June
 9, 1993?
 YES X NO ______
8. What is the amount of
 any damages for pain
 and suffering, disability,
 physical impairment, disfigurement,
 mental anguish,
 inconvenience, aggravation
 of a disease or
 physical defector loss of
 capacity for the enjoyment
 of life,
 a. In the past? $ 20,000.00
 b. In the future? $ -0-
 TOTAL DAMAGES OF
 MARIO DELVA (add
 lines 5, 6c, 8a and 8b) $ 520,034.00

[2] POST-TRIAL ORDER
THIS CAUSE came before the Court on April 13, 1995 on Defendant's "Motion to Vacate Order and/or Motion for Re-Hearing" of this Court's "Order on Reserved Motions" dated March 30, 1995, and Defendant's "Motion for Judgment in Accordance with Motion for Directed Verdict." The Court having reviewed the pleadings, heard argument of counsel, and being otherwise duly advised in the premises, it is hereby ordered and adjudged as follows:
1. Defendant's motion to vacate is denied.
2. On Defendant's motion for rehearing, the prior order is clarified, pursuant to Rule 1.530(f), Fla.R.Civ.Pro., as follows:
a. The damages awarded by the jury are unsupported by the evidence, clearly contrary to the manifest weight of the evidence and demonstrate that the jury was confused and failed to follow the evidence and the instructions. The jury awarded future medical and hospital expenses of $1,000,000. However, there was no evidence that Delva is reasonably certain to incur medical and hospital expenses of $1,000,000 in the future.
b. The jury determined that Delva was not entitled to any damages for future pain and suffering. The finding of $1,000,000 for future medical expenses cannot be reconciled with the finding of zero damages for future pain and suffering.
c. The jury's obvious confusion requires a new trial on liability as well. The Court can order a new trial on damages alone only if "the liability of the defendant was unequivocally established without substantial dispute ...". Rivera v. Aldrich, 538 So.2d 1390, 1391 (Fla. 3d DCA 1989). The Court cannot say here that the liability of the defendant was "unequivocally established without substantial dispute." Moreover, the Court cannot say that the jury's obvious confusion did not carry over to the liability portion of the trial as well.
3. Defendant's renewed motion for directed verdict is denied.
[3] While there may be something amiss about awarding $1,000,000 for fifty future years of medical treatment of injuries which will cause no pain or disability, it is quite another matter to permit the defendant to press an argument which amounts to the claim that the jury should have awarded an additional sum (for future intangibles) against it.